IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------

AMER NUMAN ADI, et al,

: CASE NO. 1:10 cv 00502

Plaintiffs,

: MEMORANDUM OPINION AND
: ORDER

-vs-

UNITED STATES OF AMERICA, et al,

Defendants.

------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff Amer Numan Adi is an alien seeking lawful permanent resident ("LPR") status in the United States. He has been married to plaintiff Fidaa K. Musleh, a United States citizen, for over twenty years. Since 1992, Ms. Musleh has filed a number of I-130 petitions, seeking an immediate relative visa and his admission as an LPR. Her petitions have been denied on account of a determination by defendant the Immigration and Naturalization Service ("INS"), and later, defendant the U.S. Citizenship and Immigration Service ("USCIS"), that Mr. Adi had entered into a previous marriage for the purpose of evading the immigration laws. Under such circumstances, Section 204(c) of the Immigration and Nationality Act, 8 U.S.C. 1154(c), mandates a denial of the I-130 petition.[1]

---

[1] INA § 204(c) provides: "no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to

The plaintiffs filed the instant suit alleging that the denial was a violation of the Administrative Procedures Act and their procedural due process rights. They seek *inter alia* an order of this Court that USCIS readjudicate and approve Ms. Musleh's petition in accordance with the law.

This matter is now before the Court on the defendants' motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule 12(b)(6). The defendants motion alternatively for summary judgment pursuant to Federal Rule 56(c). The plaintiffs have filed a response, the defendants a reply, and with the Court's grant of leave, the plaintiffs a surreply. Having reviewed the parties' arguments and the relevant law, the Court will grant the defendants' motion.

I. Background

The facts of this case stretch back to 1980, when Mr. Adi married his first wife, Ms. Linda Woods.[2] At that time, Ms. Woods filed an I-130 petition on Mr. Adi's behalf. The petition was approved, and Mr. Adi's immigration status was adjusted to lawful permanent resident. Ms. Woods and Mr. Adi divorced in 1982. Mr. Adi's second marriage ended in divorce in 1988, and that same year, he married his third wife Ms. Musleh, with whom he now has four children, all U.S. citizens. Mr. Adi moved to Brazil with his family in 1988, and abandoned his LPR status after remaining outside the United States for an extended period.

---

have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c).

[2] Following her divorce from Mr. Adi, Ms. Woods kept his last name. For ease of reference, however, the Court refers to her by her maiden name, Ms. Woods.

2

In 1990, Ms. Woods was approached by INS agents regarding the legitimacy of her marriage to Mr. Adi. The plaintiffs maintain, and the defendants do not dispute, that in April 1990, immigration officials paid two visits to Ms. Woods at her home, and presented her with a prepared affidavit to sign, which stated that her marriage to Mr Adi was not bonafide. That affidavit ("the 1990 affidavit") provides in pertinent part:

> I would like to state that the purpose of my marriage to Amer Numan Adi . . . was so that he would be able to apply for permanent residence and remain in the United States legally. When I first met Amer, he was in the United States with a student visa. When his visa expired, he told me he did not want to go back to his country and asked me if I would consider marrying him so that he could apply for a green card. He told me that once he had his card, we would get a divorce. So on May 14, 1980, we were married in San Diego, California. We were married for less than two years, and the marriage was never consummated as we did not live together during that time. * * * I would also like to add that I am making this statement freely and voluntarily and that I have not been threatened in any way nor have I been promised anything.

(Doc. 1-3).

Nothing came of the 1990 affidavit immediately. Two years later, however, Mr. Adi was issued a B-1 visitor visa, and he and Ms. Musleh returned to the United States from Brazil. Soon thereafter, Ms. Musleh filed with INS's Cleveland Field Office the first of three I-130 petitions requesting lawful permanent resident status on behalf of her husband. She supported her petition with several affidavits stating that his previous marriage to Ms. Woods was bonafide. On 20 February 2001, INS denied her petition pursuant to INA § 204(c), having found that Mr. Adi's marriage to Ms. Woods was entered into for the purpose of evading the immigration laws. This determination was based on Ms. Woods' 1990 affidavit.

Ms. Musleh did not take an appeal. Instead, she filed a second I-130 petition, this time with INS's Nebraska Service Center. On 28 November 2001, that petition was

3

approved, though apparently by mistake. So, on 14 March 2002, the INS issued a notice of intent to revoke its approval, based on Ms. Woods' sworn statement that the marriage was not bonafide. In rebuttal, Ms. Musleh submitted the same affidavits previously filed attesting to the legitimacy of the first marriage. INS then revoked its prior approval of the second petition. Ms. Musleh appealed to the Board of Immigration Appeals ("BIA"), which upheld INS's decision.

In 2007, Ms. Musleh filed a third I-130 petition with the Cleveland Field Office of U.S. Citizenship and Immigration Services[3] ("USCIS"). In support of her petition, she included a new affidavit from Ms. Woods ("the 2007 affidavit"), in which Ms. Woods attested that her marriage to Mr. Adi was in fact bonafide and that her original affidavit stating otherwise was false. (Doc. 1-4). In contrast to her previous sworn statement, the 2007 affidavit reveals that she and Mr. Adi "married for no other reason than that [they] loved each other and wanted to be together." (Doc. 1-4 at 3). She further related that "[t]he possibility of [Mr. Adi] receiving a green card never crossed [her] mind at any point during [their] courtship or marriage ceremony." (Doc. 1-4 at 3).

Ms. Woods went on to describe the scene when INS agents came to her home early one morning in 1990, while she was still in her pajamas. She expressed concern about her young children's and her neighbors' reactions to the agents' visit. She stated that she was "annoyed at the disruption, scared of the officers, and angry with [Mr. Adi] for causing [her] this trouble." She stated that she was furious and "just wanted to get things over with," so that she could return to her children who had been left unattended.

---

[3] Since the creation of the Department of Homeland Security, United States Citizenship and Immigration Services carries out the functions formerly belonging to INS.

4

She admitted that she did not understand that Mr. Adi might have been deported if she signed the document.

After submission of the new evidence, USCIS held an interview with the plaintiffs on 8 November 2008, during which the plaintiffs requested that Ms. Woods be interviewed by USCIS in regards to the most recent affidavit. (Doc. 10 at 5). According to the plaintiffs, USCIS ignored both this request and another made in writing on 18 January 2008. The plaintiffs further requested that their interview be transcribed and made part of the record of proceedings. USCIS apparently did neither.

On 27 March 2008, USCIS determined that Ms. Musleh had presented "no new credible information to overcome the previous denials for fraud." (USCIS Opinion, Doc. 1-6). In his written opinion, the district director reasoned that the 2007 affidavit failed to demonstrate why she would have sworn in 1990 that her marriage to Mr. Adi was a sham, if in fact it was not. The director explained that Ms. Woods did not articulate satisfactorily why she would have signed a false statement, at the behest of agents with whom she was furious. Further, the director noted that there was nothing to suggest that Ms. Woods had made her statement under duress. The director also pointed out that the 2007 affidavit conflicted with the timeline of events established by the record. The director therefore rejected Ms. Woods' recanting statement, and, having found substantial and probative evidence to support a finding of fraud, denied Ms. Musleh's third petition pursuant to INS § 204(c). (USCIS Opinion, Doc. 1-6).

Ms. Musleh appealed to the BIA. In reviewing the decision, the BIA considered USCIS's treatment of both Ms. Woods' affidavits and affirmed its conclusion, finding that the record contained substantial and probative evidence that Mr. Adi's marriage to

5

Ms. Woods was fraudulent. (BIA Opinion, Doc. 1-7). Like USCIS, the BIA indicated that the 2007 affidavit did not provide a convincing explanation as to why Ms. Woods would have signed a false statement. It also concluded that while Ms. Woods claimed to be "scared and worried," there was nothing to suggest that she signed the affidavit under duress, as was suggested by counsel. (BIA Opinion, Doc. 1-7 at 2).

Removal proceedings had begun against Mr. Adi in 1998, and an immigration judge has since ordered him removed. This ruling was affirmed by the BIA, and is currently on appeal before the Sixth Circuit. (Doc 8-1 at 4; Doc. 8-6; Doc. 8-8).

Following the denial of Ms. Musleh's I-130 petition and the appeal to BIA, this lawsuit ensued. The plaintiffs maintain that their procedural due process rights were violated when the government refused to interview Ms. Woods at their request, and further maintain that the government acted arbitrarily and capriciously in denying the interview. They further argue that due process and the APA required that the agency provide them a transcript of their interview with the agency. They also allege that under the APA they are entitled to a copy of the record of proceedings. In addition, the plaintiffs maintain that the agency decision was not supported by substantial and probative evidence and that USCIS gave undue weight their previous denial for fraud, in violation of Matter of Tawfik, 20 I & N Dec. 166 (BIA 1990). This matter is presently before the Court on the defendants' motion to dismiss and their alternative motion for summary judgment.

## II. Jurisdiction

Section 702 of the Administrative Procedures Act provides the right of judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The Court accordingly takes federal question jurisdiction over the plaintiffs' APA claim, as well as their federal due process claim, pursuant to 28 U.S.C. § 1331.[4]  See Ginters v. Frazier, 614 F.3d 822 (8th Cir. 2010)(it was "long ago decided the district courts have jurisdiction to review a decision on the merits of an I-130 petition to classify an alien as a relative of a United States citizen."); Bangura v. Hansen, 434 F.3d 487 (6th Cir. 2006).

## III. The Relevant Standards

### A. Rule 12(b)(6)

When ruling on a 12(b)(6) motion, the Court must construe the complaint in a light most favorable to the plaintiff, accept all his factual allegations as true, and draw all reasonable inferences in his favor. Dubay v. Wells, 506 F.3d 422, 427 (6th Cir.2007). The Court must determine whether the plaintiff's factual allegations present a plausible claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). To be considered plausible, a claim must be more than merely conceivable. Id.; Assoc. Of

---

[4] The plaintiffs' assertion that jurisdiction exists by other avenues is not well taken. First, the Declaratory Judgment Act, 28 U.S.C § 2201, does not provide a grant of jurisdiction to the district courts. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)(Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."). Second, although the plaintiffs plead jurisdiction under 28 U.S.C. § 1361, which confers jurisdiction over mandamus actions, it is not evident from the complaint that the plaintiffs in fact seek a writ of mandamus. Therefore, the Court will not consider the issue.

7

Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). Although a complaint's factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level . . . ." Bell Atlantic, 550 U.S. at 553-56; see also Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir.2008).

### B. Rule 56(c)

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### IV. Law and Argument

#### A. Procedural Due Process

The plaintiffs maintain that their procedural due process rights were violated because the government did not interview Ms. Woods at their request, nor did it provide them a transcript of their 8 November 2007 interview.

"Importantly, procedural due process rights are only violated when a *protected* liberty or property interest is denied without adequate hearing." Club Italia Soccer & Sports Organization, Inc. v. Charter Tp. of Shelby, Mich., 470 F.3d 286, 296 (6th Cir. 2006)(emphasis in original). Therefore, for the plaintiffs to succeed on their claim, they must show (1) that they were deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law. Id. (citing Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir.2002); Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir.2006).

The plaintiffs do not explain what protected liberty or property interest they were deprived, but simply state that "USCIS' refusal to interview Ms. [Woods], and give Plaintiffs a transcript of the interview violated Plaintiffs' procedural due process rights." The plaintiffs' failure to argue this point is likely immaterial, however, as it is clear that they have no recognized liberty interest in having Mr. Adi remain in the United States.[5] See Bangura, 434 F.3d at 496 ("the Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country")(quoting Almario v. Attorney General, 872 F.2d 147, 151 (6th Cir. 1989)).

Therefore, the plaintiffs have not presented a plausible claim for relief, and the Court will grant the defendants' motion to dismiss their procedural due process claim. See Ashcroft v. Iqbal 129 S.Ct. 1937, 1940 (2009)("A claim has facial plausibility when

---

[5] The question as to whether there is a property interest in an immediate relative visa which would be protected by the Due Process Clause appears to remain open. See Bangura 434 F.3d at 496-97 (citing Almario v. Attorney General, 872 F.2d 147 (6th Cir. 1989)). However, the plaintiffs do not present the issue for the Court's consideration.

9

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### C. Plaintiffs' APA claims

#### 1. Standard of Review

Agency actions are reviewed under a deferential standard. Bangura, 434 F.3d at 502 (citing Carabell v. U.S. Army Corp. of Eng'rs, 391 F.3d 704, 707 (6th Cir.2004)). A court may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); see Bangura 434 F.3d at 502. An agency decision is arbitrary and capricious if the agency fails to examine relevant record evidence or articulate a satisfactory explanation for the decision. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42-43 (1983). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." Id. at 43. However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 497 (2004). Further, "a court cannot re-weigh evidence simply because the plaintiff disputes the agency's finding. Instead, the evidence must compel a different decision to be arbitrary and capricious." See Ghaly v. INS, 48 F.3d 1426, 1430 (7th Cir.1995)

The Court also reviews the agency decision for its conformity with the law. 5 U.S.C. § 706(2)(A); see Bangura 434 F.3d at 502. In a case involving marriage fraud under Section 204(c), the Court may set aside a decision that is unsupported by

substantial and probative evidence. 8 C.F.R. § 204.2(a)(1); Bangura, 434 F.3d at 502-03; Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990). Under that standard, "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Yu v. Ashcroft, 364 F.3d 700, 702 (6th Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992) (requiring that the evidence "compel" an alternate conclusion before reversing the BIA).

Furthermore, when the Court reviews an agency decision "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706(2)(A). "An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." Connor v. U.S. Civil Service Com'n, 721 F.2d 1054, 1056-1057 (6th Cir. 1983)(citations omitted).

### 2. The Merits of Plaintiffs' APA Claims

*The government's failure to interview Ms. Woods*

The plaintiffs first argue that the denial of the petition was arbitrary and capricious because the defendants did not examine relevant evidence when "they refused to interview [Ms. Woods]." (Doc. 10 at 8).

In the Court's view, although an interview with Ms. Woods could be relevant to the marriage fraud issue, there is nothing arbitrary or capricious about the defendants' refusal to consider evidence that was never made part of the record. The arbitrary and capricious standard requires that the Court determine not merely whether the agency failed to consider relevant evidence, but whether it failed to consider relevant evidence

11

that was actually before it.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 42-43.  Perhaps, if the agency had excluded Ms. Woods' 2007 affidavit from its analysis of the bonafides of the marriage or just completely ignored the issue, which it did not, the plaintiffs might have a leg to stand on.  But, in this instance, where there simply was no interview to consider, let alone one on the record, the Court's limited scope of review prevents it from second-guessing the agency's decision not to interview Ms. Woods.  Of course, if the plaintiffs could show that the agency failed to follow its own regulations when it refused to hold an interview, the Court might treat the issue differently.  However, the plaintiffs have not directed the Court to any relevant provision that would warrant such a treatment, and the Court is unaware of any such provision.

*Transcription of the 8 November 2008 interview with the plaintiffs*

The plaintiffs suggest that the agency did not follow its own regulations when it failed to transcribe and make part of the record their 8 November 2008 interview with USCIS.  Again, they do not direct the Court to any administrative rule that would require USCIS in this instance to transcribe and enter into the record their interview.  Under certain circumstances when a hearing is required, the agency must make transcripts available to a petitioner, see, e.g., 5 U.S.C. § 556(e), but there is no indication that Ms. Musleh's filing of an I-130 petition triggered those provisions of the Administrative Procedure Act.  Therefore, in this instance, the agency was not required to transcribe and make its interview with the plaintiffs part of the record.

*Record of Proceedings*

The plaintiffs further maintain that USCIS broke its own rules when it did not provide them with, or allow them to inspect, a copy of the record of proceedings. (Complaint ¶41, Opposition at 7). The defendants, however, maintain that the plaintiffs did receive full disclosure of all parts of the record to which they were entitled. They point out that the plaintiffs had a copy of Ms. Woods 1990 affidavit, and they maintain that all other statements considered by the government were submitted by the plaintiffs themselves.

The administrative rules provide that a petitioner "shall be permitted to inspect the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16). However, this provision is limited by the one that follows, which provides, in pertinent part:

> If the decision will be adverse to the applicant or petitioner and is based upon derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her behalf before the decision is rendered. . . .

8 C.F.R. § 103.2(b)(16)(i). "This provision requires disclosure only of information of which the applicant 'is unaware.' The regulation is directed to adverse information that the applicant does not know about – usually from a third person – not to such information that the applicant simply has forgotten." Sardo v. Dep't of Homeland Sec., 2008 WL 2596206, at *4 (6th Cir. 1 July 2008).

In denying Ms. Musleh's petition, both USCIS and the BIA relied primarily on Ms. Wood's first sworn statement. Because the plaintiffs had copies of that affidavit, they were properly disclosed all derogatory information upon which the decision was based.

13

The plaintiffs point to no specific derogatory information of which they were deprived, and the Court rejects their argument that additional derogatory information must have existed based on USCIS's statement that the 1990 affidavit was the *primary*–and, therefore, according to the plaintiffs, not the only–basis of the denial." It is outside the Court's limited scope of review to attempt to imagine what further derogatory evidence there "may have been," and the Court will not take the step that the plaintiffs suggest. Moreover, even if plaintiffs could establish that proper disclosure was not made, they have not shown how they would have been prejudiced in this instance.

### *Substantial and Probative Evidence and* Matter of Tawfik

Finally, the plaintiffs' contention that the agency decision is unsupported by substantial and probative evidence is not well taken. When reviewing for substantial evidence, this Court must determine whether there is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court may not substitute its judgment for that of the agency, even if it might arrive at a different conclusion. Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins Co., 463 U.S. 29, 43 (1983). Ms. Woods' original sworn statement that her marriage to Mr. Adi was entered into for the purpose of acquiring a green card is adequate to support the agency's conclusion that their marriage was a sham, and her later affidavit recanting this testimony is not sufficient to compel a conclusion to the contrary. As such, the Court is constrained to uphold the agency's finding.

14

It is further noted that, contrary to the plaintiffs' contentions, Ms. Wood's contradictory testimony does not create the sort of factual issue fit for resolution before the Court. The plaintiffs seem to believe that her differing accounts of the marriage's legitimacy create a genuine issue of material fact precluding summary judgment. When reviewing for substantial evidence, however, the Court may not attempt to resolve a dispute of this nature. The Court's role is to determine whether there exists "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." In this instance, the Court resolves that question in the affirmative.

In addition, the Court finds that the agency complied with Matter of Tawfik, 20 I & N Dec. 166 (BIA 1990), which requires that the "district director . . . not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." Tawfik, 20 I & N Dec. at 168. Review of USCIS's decision reveals that the director did not deny Ms. Musleh's I-130 petition simply on the basis of a previous finding of marriage fraud. Rather, he independently considered both affidavits submitted by Ms. Woods and reasonably concluded that the second recanting affidavit was not credible. (See USCIS Opinion, Doc 1-6, pp. 2-4).

First, the director noted that while Ms. Woods claimed to be furious at the agents for having visited her home, this did not explain why she would provide them a false statement. The director also pointed out inconsistencies between the 2007 affidavit and other evidence on the record. In particular, he noted that Ms. Woods' statement that they had been married for over a year before filing immigration paperwork conflicts with record evidence showing otherwise. Similarly, her claim that they lived together for

15

almost two years before separating does not comport with the record. Finally, he noted that neither Ms. Woods nor anyone else ever submitted evidence of co-habitation or co-mingling of finances. (See USCIS Opinion, p. 4). The Court holds that this sort of detailed analysis is sufficient to comply with Matter of Tawfik, and that the director did not give undue weight to the previous finding of fraud.

As there are no issues of material fact to resolve, and having addressed the merits of the plaintiffs' APA claims, the Court finds that the defendants are entitled to judgment as a matter of law. The Court will grant the defendants' alternative motion for summary judgment as to the plaintiffs' APA claims.

### V. Conclusion

For the reasons discussed above, the Court finds in favor of the defendants. Their motion is granted (resolving Docket #8).

IT IS SO ORDERED.

                                                 /s/ Lesley Wells
                                                 UNITED STATES DISTRICT JUDGE

Date: 3 January 2011